IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MATTHEW B. ALEXANDER,<br><br>Plaintiff,<br><br>vs.<br><br>WARDEN DOUG LUNEKE,<br><br>Defendant. | CASE NO. 4:25-CV-00770-BYP<br><br>JUDGE BENITA Y. PEARSON<br>UNITED STATES DISTRICT JUDGE<br><br>MAGISTRATE JUDGE<br>JONATHAN D. GREENBERG<br><br>**REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of Matthew B. Alexander ("Alexander" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Alexander is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State of Ohio v. Matthew Alexander*, Mahoning County Court of Common Pleas Case No. 20CR634. For the following reasons, the undersigned recommends that the Petition be DENIED.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Alexander's conviction as follows:

> {¶4} On September 9, 2020, Appellant and Levin were at a bar drinking and one of them asked a man at the bar if he knew where to buy drugs. The man was not identified at trial and it was not established if either Appellant or Levin knew the man. The three left the bar in Levin's car to buy drugs.

> The man gave Levin directions and Appellant gave the man $100 for drugs. Upon arriving at a house, the man left the car to buy the drugs, but he never returned.
>
> {¶5} After waiting a few minutes, Levin exited her car and approached the front door of the house. She knocked on the door and the homeowner, Angela Schneider, answered. The entire conversation between the two is unclear, but Angela told Levin that she had no idea about the man or drugs. Angela told Levin to leave. When Appellant thereafter approached, Angela slammed the door shut and called 911.
>
> {¶6} Appellant and Levin returned to her car and started to drive away, but stopped a little distance away from Angela's house. A camera mounted in Angela's carport shows Levin walking into the carport, which is adjacent to her garage. The garage was adjacent to the home. Levin walked into the carport, picked up a gas can, and poured gasoline into and over a propane grill, a lawnmower, and children's bikes. She attempted to light the grill, but it did not ignite. She walked away from the grill.
>
> {¶7} The carport camera then shows Appellant entering the carport and walking over to the grill while Levin is pouring gas around the edges of the carport. Appellant is then shown bending over the grill with his back to the camera, with only his left hand visible. The grill then ignited and flames burst out of it. The camera shows Appellant and Levin leaving the carport and walking down Angela's driveway.
>
> {¶8} Angela viewed the video and again called 911. The fire department came and extinguished the fire.

*State v. Alexander*, 2024-Ohio-2565, ¶¶ 4-8, 246 N.E.3d 1117, 1120–21, *appeal not allowed,* 2024-Ohio-4919, 175 Ohio St. 3d 1487, 243 N.E.3d 1284.

## II. Procedural History

### A. Trial Court Proceedings

On October 22, 2020, the Mahoning County Grand Jury indicted Alexander on the following charges: two counts of aggravated arson, one count of aggravated burglary, and one count of breaking and entering. (Doc. No. 11-1, Ex. 1.) Alexander entered pleas of not guilty to all charges. (*Id*., Ex. 2.)

On August 18, 2021, Alexander filed a Motion to Dismiss Indictment; Alternative Motion in Limine Regarding Evidentiary Tape; Request for Hearing. (*Id*., Ex. 3.) Alexander raised the following arguments in support of his motion:

> A. THE STATE'S FAILURE TO RETAIN THE GRILL AS EVIDENCE IN AN ACTIVE ARSON INVESTIGATION VIOLATED DEFENDANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW.
>
> B. THE STATE SHOULD NOT BE PERMITTED TO HAVE FAILED TO PRESERVE EVIDENCE AND/OR PERMIT IT'S (sic) DESTRUCTION AND SIMULTANEOUSLY PLAY A RECORDING THAT IS NEITHER ACCURATE NOR FAIR.
>
> C. THE STATE CAN STILL ATTEMPT ESTABLISH (sic) ITS CASE IN CHIEF AGAINST MATTHEW ALEXANDER THROUGH ITS COOPERATING WITNESS, ASHLEY LEVIN.
>
> D. THE BEDROCK PRINCIPLES OF A FAIR TRIAL, EQUAL PROTECTION, AND JUSTICE UNDER THE LAW BEG THAT SOMETHING SUBSTANTIAL BE DONE TO PREVENT MANIFEST INJUSTICE FROM OCCURRING.

(*Id*.) The State filed an opposition. (*Id*., Ex. 4.) Alexander filed a brief in support. (*Id*., Ex. 5.) On May 5, 2022, the trial court denied Alexander's Motion to Dismiss and Motion in Limine. (*Id*., Ex. 6.)

On May 19, 2023, during trial, the State moved to dismiss Count 3, aggravated burglary. (*Id*., Ex. 7.) The trial court granted the motion. (*Id*.)

Following trial, the jury found Alexander guilty of both counts of aggravated arson and breaking and entering. (*Id*., Ex. 8.) A judgment entry reflecting the same was filed on May 23, 2023. (*Id*., Ex. 9.)

On July 19, 2023, the trial court sentenced Alexander to serve ten to fourteen years. (*Id*., Ex.10.) That same day, the trial court notified Alexander that he was required to register as an arson offender. (*Id*., Ex. 11.) On August 15, 2023, the trial court filed a nunc pro tunc entry correcting the sentence regarding jail time credit and notifying Alexander of his right to appeal. (*Id*., Ex. 12.)

**B. Direct Appeal**

Alexander, through two different counsel, filed two appeals to the Seventh District Court of Appeals. (*Id*., Ex. 13-14.) On August 28, 2023, the Magistrate Judge ordered the cases be consolidated. (*Id*., Ex. 15.) In his appellate brief, he raised the following assignments of error:

> I. The trial court erred in overruling Appellant's motion to dismiss evidence because the actions of the government in failing to preserve a crucial piece of evidence destroyed the Defendant's ability to present a defense, due process, the right to defend liberty, and the right to have justice administered without denial, freedoms protected by U.S. CONST., amend. XIV and OHIO CONST. art. I, §§1, 2, and 16.
>
> II. The trial court denied Appellant's right of confrontation under the Federal Constitution and his right to meet the witnesses against him face-to-face under the Ohio Constitution when the court limited cross-examination of the testifying co-defendant without justification.
>
> III. [T]he trial court abused its discretion in sentencing appellant to a sentence 5 times longer than the co-defendant.

(*Id*., Ex. 16.) The State filed a brief in response. (*Id*., Ex. 17.) On July 3, 2024, the Court of Appeals affirmed the judgment of the trial court. (*Id*., Ex. 18.)

On August 16, 2024, Alexander, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio. (*Id*., Ex. 19.) In his Memorandum in Support of Jurisdiction, Alexander raised the following Propositions of Law:

> I. When the State fails to preserve crucial evidence, regardless of good faith or bad faith, it frustrates a criminal defendant's ability to present a defense, the right to defend liberty, and the right to have justice administered without denial, freedoms protected Ohio Constitution Article I, Sections 1 and 16.
>
> II. It is a denial of confrontation under the Federal Constitution and the right to meet the witnesses face-to-face under the Ohio Constitution when a courts limits cross-examination of the testifying co-defendant about the extent of her plea agreement.

(*Id*., Ex. 20.) The State filed a Waiver of Memorandum in Response. (*Id*., Ex. 21.)

On October 15, 2024, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4). (*Id*., Ex. 22.)

### C. Federal Habeas Petition

On April 7, 2025,[1] Alexander filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**: Due process right to examine exculpatory evidence.
> **Supporting Facts**: A gas grill, which is central to the arson case, was not preserved by the state which prejudice [sic] the petitioner because he could not examine it.
>
> **GROUND TWO**: Constitutional right to confront witness was denied by trial court.
> **Supporting Facts**: Defense was limited in cross examination of co-defendant who testified against petitioner. Examination was curtailed which denied petitioner right to confront witness to his prejudice.

(Doc. 1.)

On October 3, 2025, Warden Doug Luneke ("Respondent") filed his Return of Writ. (Doc. No. 11.) Alexander, through counsel, filed a Supplemental Memorandum on November 10, 2025. (Doc. No. 15.) On November 14, 2025, Respondent filed Response to Petitioner's Supplemental Memorandum. (Doc. No. 16.)

## III. Review on the Merits

### A. Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until April 16, 2025, Alexander states that he placed it in the prison mailing system on April 7, 2015. (Doc. No. 1 at 15.) Thus, the Court will consider the Petition as filed on April 7, 2015.

> to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v.Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. See also*

*Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**1. Ground One**

In his first ground for relief, Alexander argues his due process right to examine exculpatory evidence was violated because a gas grill was not preserved by the state. (Doc. No. 1 at 6.) Alexander argues he was unable to examine a gas grill that was "central to the arson case". (Id*.)*

Respondent argues the court of appeals reasonably applied *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988), and properly found no bad faith on the part of the state.[2] (Doc. No. 11 at 29-32.) Respondent notes the grill was never in possession of the police, and there was video evidence of the crime. (*Id*. at 30.) Respondent contends the court of appeals' adjudication of ground one was not objectively unreasonable in light of clearly established precedent from the United States Supreme Court, and it is therefore meritless. (*Id*. at 32.)

In his supplemental memorandum, Alexander states he "was held to an impossible standard" when he "could not justify to the trial court his right to have access to a piece of evidence upon which he might experiment in search for exculpatory evidence." (Doc. No. 15 at 5.) Alexander takes issue with "the hairsplitting" between materially exculpatory evidence and potentially useful evidence, and states the *Youngblood* opinion has been "under fire." (*Id*. at 6.) Alexander contends the state's failure to seize and preserve the grill denied his ability to have it examined to determine whether it was exculpatory or not, which denied him due process. (*Id*. at 11.)

Respondent's Response to Supplemental Memorandum points out that the court of appeals found the grill was not materially exculpatory, and that Alexander failed to identify any materially exculpatory value beyond subjecting it to testing. (Doc. No. 16 at 2.) Respondent notes the court of appeals is entitled to a presumption of correctness (28 U.S.C. § 2254(e)(1)) and that Alexander does not contest the facts recited by the court of appeals. (*Id*. at 3.) Respondent argues that federal habeas corpus is the wrong forum to argue alleged deficiencies in the Supreme Court opinion *Youngblood*. (*Id*. at 5.)

Alexander raised his exculpatory evidence claim through the state courts. (Doc. No. 11-1, Ex. 16, 20.) The Seventh District Court of Appeals, the last court to decide the issue, made the following findings:

[2] Respondent also argues both grounds are non-cognizable. In the interest of judicial economy, the Court declines to consider whether the claims are non-cognizable as they both fail on the merits. The Court agrees that if the grounds are non-cognizable, that is another reason to deny the Petition.

{¶59} Appellant contends that the standard for determining whether he was denied protected access to the evidence used against him is an impossible one. He cites *State v. South*, 162 Ohio App.3d 123, 2005-Ohio-2152, 832 N.E.2d 1222 (9th Dist.), where the court acknowledged a defendant's constitutional guarantee to the same access to evidence that the State intends to use and uses at trial. There, the State used a videotape at trial and denied the defendant access to the tape despite his discovery requests. The State argued that even if it had violated the criminal discovery rule by refusing access to the videotape, the defendant could not prove he was prejudiced by the refusal because he offered only speculation that it would prove his innocence. *Id.* at ¶ 13.

{¶60} The Ninth District noted the circular reasoning of this assertion, asserting that the State essentially argued that a defendant "has not justified his right to a copy of the videotape upon which he might experiment in search of exculpatory evidence because he has not already proven that the experiment would produce exculpatory evidence." *Id.* The court held that all that this would show is that the defendant did not conduct experiments on a videotape that he did not have. *Id.*

{¶61} Appellant asserts that the same "dizzying" standard was applied here. He contends that he was unable to inspect the grill to search for exculpatory evidence because he did not show that an experiment would produce exculpatory evidence. Yet he could not show the experiment would produce exculpatory evidence because he had no access to the grill to find such exculpatory evidence. Appellant submits that the failure to preserve the grill thus violated his due process rights, his right to a fair trial, and his right to present a defense.

{¶62} Appellant contends that the trial court in this case too narrowly interpreted the State's obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady*, the Supreme Court held that constitutional due process is violated when a prosecutor suppresses evidence favorable to a defendant where the evidence is material to guilt or to punishment, regardless of the good or bad faith of the prosecution. *Id.* at 87, 83 S.Ct. 1194. Appellant asserts that this "materially exculpatory" standard should be liberally applied.

{¶63} Appellant notes that the trial court instead applied the "potentially useful" standard from *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and the Ohio Supreme Court's opinion in *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1. In *Youngblood*, the Court set forth the "potentially useful" standard in determining whether a criminal defendant is denied due process when the State fails to preserve or loses evidence, as opposed to suppressing evidence:

> But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said then that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

*Id.* at 57-58, 109 S.Ct. 333.

{¶64} Appellant notes that while the Ohio Supreme Court has embraced the standard in *Youngblood*, it has not considered it under the Ohio Constitution. He emphasizes Article 1, section 1 of the Ohio Constitution, which protects inalienable rights, such as defending life and liberty, and Article 1, section 16, which require open access to the courts and due process of law.

{¶65} Appellant cites *Geeslin*, 2007-Ohio-5239, 878 N.E.2d 1, where the Court held that a defendant must show that the State acted in bad faith in destroying potentially useful evidence. He contends that many courts have criticized the standard in *Youngblood* because it requires a trial court to determine whether a piece of evidence is "potentially useful" or "materially exculpatory" without actually possessing the evidence to make that decision. He also asserts that the difference between "materially exculpatory" and "potentially useful" evidence is a distinction without a difference.

{¶66} Appellant submits that the evidence against him was disputable. He asserts that he walked into the carport after Levin tried to ignite the grill, he stood in front of the grill, and he turned the grill controls to the "off" position. He asserts that this constitutes an arguable claim that he did not commit aggravated arson because it shows that he did not intend to knowingly cause a fire or explosion. He contends that his entire defense was based on showing that he did nothing to knowingly create a substantial risk of serious harm to any person. Appellant argues that the grill was more than "potentially useful" because testing it could have shown that his fingerprints or DNA were the last on the controls, which would have confirmed his claim that he tried to stop Levin from starting the fire as she turned the controls on.

{¶67} Appellant also maintains that testing the grill could have confirmed if it ignited due to a malfunction after Levin turned it on, pressed the buttons, and walked away, and it then ignited while he was in front of it. He notes Angela's testimony that the grill never malfunctioned when she used it. He claims that the video, in combination with testing the grill, could have shown that it did malfunction.

{¶68} Appellant directs the Court to the cross-examination of Captain Marcum, who revealed that he found the propane knobs in the "off" position. Appellant contends that preserving the grill for testing could have shown that he did not start the fire, especially with Captain Marcum's testimony that the grill's knobs were in the "off" position.

{¶69} Appellant also asserts that the State's main reasons for not seizing and preserving the grill were unknown at the time of the investigation. He notes that Captain Marcum testified that he failed to seize and preserve the grill because it was inconvenient to store, a video of the incident existed, and Levin had confessed. However, Appellant notes that Captain Marcum did not learn that a video of the fire existed or that Levin had confessed until after the grill was left at the scene and Angela discarded it days after the fire.

{¶70} Appellee counters that to determine whether the State's failure to preserve evidence violates due process depends upon whether the lost or destroyed evidence involves "materially exculpatory evidence" or "potentially useful evidence." Appellee notes that a defendant must prove that evidence is "materially exculpatory" by showing that it possesses an "exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

{¶71} Appellee asserts that the grill was "potentially useful" and not "materially exculpatory" because the defense was not able to identify an evidentiary value in the grill, although an examination of the grill may have been helpful. Appellee argues that Appellant's argument is the same as that in *Youngblood* in that he asserts that the grill could have been subjected to tests that may have exonerated him.

{¶72} Appellee cites to the Ohio Supreme Court's decision in *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865. There, Powell was charged with aggravated murder based on aggravated arson after he set fire to a two-story home which killed two of its residents. Fire investigators examined the home and the home was ordered torn down because it constituted a safety hazard. The defense filed a motion to dismiss

the case because the State failed to preserve the home before they could inspect it.

{¶73} Appellee explains that the Ohio Supreme Court reviewed the ruling on the motion to dismiss and agreed that the home did not contain any "materially exculpatory" evidence before it was demolished. *Id.* at ¶ 79. Appellee cites the Court's holding that fire investigators had established where the fire originated, gasoline was used to start the fire, and arson was the cause of the fire. *Id.* at ¶ 78.

{¶74} Appellee contends that the same analysis applies here since the fire investigator determined the cause of the fire and where it started, video evidence supported those conclusions, and Levin admitted pouring gas into the grill and hearing the ignition button click three times while Appellant stood in front of it. Appellee concludes that the grill was therefore only "potentially useful" and Appellant was required to show bad faith in failing to preserve the grill.

{¶75} Appellee further asserts that Appellant failed to show that the State acted in bad faith because he cannot show that the fire investigator or the police detective acted in bad faith by failing to preserve the grill. Appellee cites Captain Marcum's testimony that he did not secure the grill because he felt it unnecessary for his investigation. Appellee also cites Detective Sergeant McGlynn's testimony that the grill was so insignificant to his investigation that it did not cross his mind to preserve it. (Motion Hg. Tr. at 27-28).

{¶76} In sum, Captain Marcum investigated the grill on the night of the fire, September 9, 2020. (Motion Hg. Tr. at 9-11). He testified that he cleared the scene on that night, conducted an arson investigation, and turned the home back to Angela. (Motion Hg. Tr. at 11). She told him that she had watched the video from her carport camera which showed that the fire started in the grill. (Motion Hg. Tr. at 15).

{¶77} When asked if his investigation was complete at that time, Captain Marcum responded, "Mostly. We were waiting on video evidence." (Motion Hg. Tr. at 11). Captain Marcum testified that he could not determine the point of origin of the fire that night due to the gasoline. (Motion Hg. Tr. at 12). He explained that after watching the video from the camera in the carport five days later, he determined that the fire started at the grill. (Motion Hg. Tr. at 12). He reported that it was not necessary to return to secure the grill because he had the video. (Motion Hg. Tr. at 12). He determined that human interaction at the grill ignited the fire. (Motion Hg. Tr. at 12).

{¶78} On cross-examination, Captain Marcum testified that nothing about the grill was readily apparent to show that it had evidentiary value because of the video, Levin's confession, and Angela's statements. (Motion Hg. Tr. at 28).

{¶79} Detective Sergeant McGlynn testified that he did not know that a grill was involved in the fire until five days later when he watched the video. (Motion Hg. Tr. at 37-38). He stated that it was not necessary to preserve the grill at that time because he had the video and Levin's confession, but also because the grill was left with Angela for the five days. (Motion Hg. Tr. at 38). He agreed that the trigger for the fire in the grill was an ignition source. (Motion Hg. Tr. at 37).

{¶80} The trial court denied Appellant's motion to dismiss the case or to limit evidence relating to the grill at trial. The court set forth the distinction between "materially exculpatory" and "potentially useful" and the requirement that the former does not require the defendant to show bad faith on the part of the State while the latter does.

{¶81} The court indicated that it viewed the carport video in chambers and noted that technical difficulties prevented the playing of the video at the hearing. The court found that the video showed the two defendants near the grill. The court cited Captain Marcum's testimony that he did not destroy, dispose of, or assist in the disposal of the grill. The court cited Captain Marcum's further testimony that it was not a mistake to fail to preserve the grill because of the video of the incident and Ms. Levin's confession. The court also cited Detective Sergeant McGlynn's testimony reporting the same.

{¶82} The court concluded that from the video, it found nothing readily apparent about the grill, its condition or appearance that would make it "materially exculpatory." The court held that the grill could have been "potentially useful," and therefore, under *Youngblood*, a finding of bad faith on the part of the government must be established before sanctions could be considered. The court found that bad faith was not shown.

{¶83} The court further denied the motion in limine, holding that the video was unbiased and presented the finders of fact a rare opportunity to see the incident as it was occurring. The court reasoned that the jury could watch the video and decide for themselves what they saw, and Appellant could interpret for the jury his interpretation of what the jurors were watching.

{¶84} A de novo standard of review applies to a trial court's decision on a motion to dismiss criminal charges based upon the State's failure to preserve or disclose exculpatory evidence. *State v. Dotson*, 2018-Ohio-2481, 114 N.E.3d 390 (7th Dist.) citing *State v. Whalen*, 2008-Ohio-6739, 2008 WL

5329976, ¶ 7-8 (9th Dist.). Thus, we accept the trial court's determination of the factual issues so long as they are supported by competent and credible evidence. *State v. Huffman*, 2024-Ohio-889, 2024 WL 1050108, ¶ 20 (11th Dist.) (citations omitted). We then conduct a de novo review of the court's application of the law to those facts. *Id.*

{¶85} The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects a criminal defendant from conviction where the State fails to preserve "materially exculpatory" evidence or destroys "potentially useful" evidence in bad faith. *Dotson*, 2018-Ohio-2481, 114 N.E.3d 390, ¶ 86, citing *State v. Tarleton*, 2003-Ohio-3492, 2003 WL 21505839, ¶ 10 (7th Dist.) (citing *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)) and *Youngblood*, 488 U.S. at 55-58, 109 S.Ct. 333. The defendant must prove that the evidence at issue was "materially exculpatory." *State v. Jackson*, 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (1991).

{¶86} Evidence is "materially exculpatory" if it (1) "possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means." *State v. Stubbs*, 2019-Ohio-4147, 2019 WL 5061454, ¶ 21 (7th Dist.), citing *State v. Benton*, 136 Ohio App.3d 801, 805, 737 N.E.2d 1046 (6th Dist. 2000) (citing *Trombetta*, 467 U.S. at 489, 104 S.Ct. 2528).

{¶87} Evidence is "potentially useful" when "no more can be said then that it could have been subjected to tests, the results of which might have exonerated the defendant." *Stubbs*, 2019-Ohio-4147 ¶ 22, quoting *Youngblood*, 488 U.S. at 57, 109 S.Ct. 333. If the evidence is "potentially useful" and not "materially exculpatory," a defendant must show that police or the prosecution acted in bad faith in failing to preserve evidence before the failure to preserve violates due process rights. *State v. Keith*, 79 Ohio St.3d 514, 523, 684 N.E.2d 47 (1997). Bad faith constitutes more than bad judgment or negligence. *Id.* "'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" *State v. Wolf*, 154 Ohio App.3d 293, 2003-Ohio-4885, 797 N.E.2d 109, ¶ 14 (7th Dist.), quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983).

{¶88} In *Stubbs*, 2019-Ohio-4147, Stubbs asserted on appeal that his due process rights were violated when the State failed to preserve "materially exculpatory" evidence of a gun after the State allowed test firing of the gun for operability after he filed a motion for the State to preserve the gun so that he could have it tested. We outlined the law on "materially exculpatory"

evidence and "potentially useful" evidence and held that the gun was not "materially exculpatory." *Id.* at ¶ 23. We explained that:

> [t]he gun, on its face, did not possess an apparent exculpatory value. Nothing about it clearly exonerated appellant. Instead, the gun was potentially useful. It is possible that had the gun been subject to fingerprint or DNA testing, these tests could have revealed fingerprints or DNA belonging to other occupants of the car instead of appellant. Appellant could have used this evidence, if it existed, to bolster his defense that the gun did not belong to him. But testing also could have revealed appellant's fingerprints or DNA on the gun or the testing could have been inconclusive.

*Id.*

{¶89} We find that the grill was not "materially exculpatory." Appellant speculates that the grill may have malfunctioned in its operating system or ignition. He speculates that the results of an inspection of the grill and its controls could establish this malfunction. He hypothesizes that the grill controls or propane tank control could show his fingerprints were the last on the grill, which could show that he turned it to the "off" position or Levin's fingerprints on it to show that it was in the "on" position.

{¶90} However, Appellant fails to identify any materially exculpatory value to the grill beyond subjecting it to testing, with speculation that test results *may have* exonerated him. This is the same argument that the United States Supreme Court rejected as "materially exculpatory" in *Youngblood*, the Ohio Supreme Court denied as "materially exculpatory" in *Powell*, and this Court found as only "potentially useful" in *Stubbs.* Thus, we find that the trial court correctly applied the "potentially useful" standard.

{¶91} Addressing the failure to preserve the grill as a loss of "potentially useful" evidence, Appellant must establish bad faith on the part of the State or its agents in failing to preserve the grill. *Id.* While the better practice would have been to preserve the grill, it does not appear that Captain Marcum or Detective Sergeant McGlynn acted in bad faith by failing to preserve it. Detective Sergeant McGlynn certainly did not act in bad faith by failing to preserve the grill as he did not even know that the fire involved a grill until five days after the fire or that a video existed showing the fire. By the time he was notified, Angela had kept the grill in her carport in an unsecured area.

{¶92} Captain Marcum's testimony is slightly contradictory. He testified that, although he could not determine the origin of the fire on the night it occurred, he nonetheless failed to preserve the grill. (Motion Hg. Tr. at 11-12). At one point, he stated there was no need because he obtained new

> evidence via the video, however, he also testified that he did not learn of the video until five days later, after his investigation of the scene. (Motion Hg. Tr. at 12). Captain Marcum later testified that he spoke to Angela on the night of the fire. She told him she watched the camera footage and she saw that the fire started from the grill. (Motion Hg. Tr. at 14).
>
> {¶93} While Captain Marcum failed to put forth the strongest reasoning for failing to preserve the scene, and particularly, the grill, Appellant cannot establish bad faith on the part of the State, the AFD, or the APD. At most, his testimony may show some negligence or bad judgment on the part of Captain Marcum. However, neither negligence nor bad judgment rise to the level of bad faith.
>
> {¶94} Accordingly, we find that Appellant's first assignment of error lacks merit and is denied.

*Alexander*, 2024-Ohio-2565, ¶¶ 59-94.

This Court explained in *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 729 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007):

> [T]he failure to preserve potentially material, exculpatory information violates constitutional due process only if the failure to preserve the evidence resulted from bad faith by the police. This is so because:
>
> > [T]he Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than it could have been subject to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in *California v. Trombetta,* [467 U.S. 479] at 486, 104 S.Ct. 2528, 81 L.Ed.2d 413 [1984], that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause, see *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941), as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.
>
> *Arizona v. Youngblood,* 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

The *Bonnell* Court explained that the post-conviction trial court reviewed the facts and determined there was no showing that the State acted in bad faith in preserving evidence in the case. *Bonnell*, 301 F. Supp. 2d at 729. The *Bonnell* Court stated that the reviewing court's findings are presumed correct under the AEDPA. *Id*. Here, as in *Bonnell*, the appellate court found the facts failed to show the state acted in bad faith in preserving evidence in this case. *Alexander*, 2024-Ohio-2565, ¶¶ 93-94. The appellate court finding is presumed correct under the AEDPA and is neither contrary to nor an unreasonable application of clearly established U.S. Supreme Court law. *Trombetta,* 467 U.S. at 486, 104 S.Ct. 2528. Therefore, the undersigned recommends Ground One be DENIED.

**2. Ground Two**

In his second ground, Alexander asserts he was denied the constitutional right to confront witnesses when the trial court limited defense counsel's cross examination of the co-defendant to state that she agreed to plead guilty in exchange for a lesser sentence, and if she had not plead guilty, her sentence would be "many more years" instead of the exact penalties she faced. (Doc. No. 1, p. 8.)

In response, Respondent argues the trial court did not abuse its discretion when it limited defense counsel's examination of the co-defendant witness to the proposition that she was facing "many more years" of potential incarceration rather than the three years she received for her cooperation. (Doc. No. 11 at 35.) Respondent states the Confrontation Clause guarantees defendants the opportunity to cross-examine adverse witnesses about potential bias, prejudice, or motive to lie, and trial courts can impose reasonable limits on the scope of cross-examination. (Id.) Respondent contends the jury was told only that the co-defendant would have received "many more years" in prison, and the jury could have concluded that meant she faced more than eleven years, or any number of years more than the three-year sentence she received. (*Id*.) Respondent argues the appellate court's adjudication was not objectively unreasonable, and ground two is meritless. (*Id*. at 36.)

Alexander's Supplemental Memorandum (Doc. No. 15) failed to address ground two.

Alexander raised his Confrontation Clause argument to the state appellate court. (Doc. No. 11-1, Ex. 18.) The state appellate court considered the claim on the merits and rejected it as follows:

> {¶96} Defense counsel cross-examined Levin and began asking her, "[a]nd then isn't it accurate that the State of Ohio to ask you [sic] initially would you -- would you agree to cooperate, come and testify against Matt Alexander; and if you do so, instead of getting a potential of, you know, up to 11 years on the aggravated arson --" (Trial Tr. at 401). The prosecution objected and the court asked defense counsel to refrain from questioning Levin about potential sentences and confine his cross-examination to the State's recommended sentence that she agreed to and the "many more years" that she could have received in prison if she did not plead guilty. (Trial Tr. at 402).
>
> {¶97} The court thereafter heard argument in chambers and explained that it limited cross-examination on the exact penalties Levin faced because the jury would be indirectly exposed to Appellant's potential sentence. (Trial Tr. at 403). Defense counsel reminded the court of its pretrial promise to give latitude in raising biases that Levin may have. (Trial Tr. at 405). He requested that the court allow him to ask Levin if she was facing "many more" years in prison had she not taken a plea bargain. (Trial Tr. at 407). The court indicated that defense counsel and the State agreed to the suggestion that defense counsel ask Levin, "isn't it true you accepted a plea where you would be recommended to serve two or three years, instead of maybe facing many more years were you not to accept that plea?" (Trial Tr. at 404).
>
> {¶98} Appellant contends that the trial court denied him the constitutional right of confrontation by improperly limiting his counsel's cross-examination of Levin. He contends that the court would not allow his counsel to ask Levin the exact number of years she was facing in prison had she not entered into a plea agreement which included cooperation against him. Appellant asserts that earlier in the trial, the court informed counsel it would allow wide latitude on the cross-examination of Levin on her biases in testifying against Appellant.
>
> {¶99} Appellant acknowledges that courts may place limitations on cross-examination in criminal cases, but notes that it is only for compelling reasons and the limitations are narrow. He contends that the trial court not only curtailed his counsel's cross-examination, but also crafted the questions that counsel could use in the cross-examination.

{¶100} Appellant also questions the court's reasoning for limiting counsel's cross-examination that Levin was facing a potential sentence of "many more years," rather than the exact sentence she was facing had she not pled guilty. The court explained that it did so because it did not want the jury to know the potential penalties Appellant faced, which would be the same as Levin. Appellant notes that the record fails to show the jury was aware or would have known that he was charged with the same offenses as Levin or that they potentially faced the same sentence. He also submits that jurors are instructed to follow the law and the court instructed the jurors not to consider possible sentences in deliberating. Appellant also contends that even if the jury did know the potential sentence, the State bears that risk when electing to use a co-defendant at trial.

{¶101} Appellee responds that although the federal and state constitutions grant defendants the right of confrontation, the trial court possesses sound discretion in limiting that right and may limit the extent of cross-examination into appropriate subjects of inquiry. Appellee asserts that the court exercised sound discretion as it faced challenges regardless of the determination it made on the issue. Appellee maintains that on one hand, the jury would learn Appellant's maximum potential sentence if the court allowed defense counsel to ask Levin the sentence she faced if she did not plead guilty. Yet on the other hand, if the court denied defense counsel the right to ask Levin about her plea deal to demonstrate a reason for her to be untruthful at trial, this would violate his right to confront the witnesses against him and his counsel would be prevented from cross-examining her effectively as to her motives to testify.

{¶102} Appellee cites cases where the Ohio appellate courts found no abuse of discretion when the trial courts limited defense counsels' cross-examinations. *State v. Gonzales*, 151 Ohio App.3d 160, 2002-Ohio-4937, 783 N.E.2d 903, ¶ 46-47 (1st Dist.) (while cross-examination can serve to demonstrate the co-defendant's motive to lie, defense counsel is not permitted to explore the issue "to the extent counsel desired to 'hammer it home' to the jury.") Appellee notes that the jury in this case heard that Levin faced the same charges as Appellant, her charges were reduced due to the plea agreement, and she was facing "many more years" in prison if she did not enter a plea agreement and testify against Appellant.

{¶103} The standard of appellate review of a trial court's determination on the scope of cross-examination is abuse of discretion. *State v. Lundgren*, 73 Ohio St.3d 474, 653 N.E.2d 304 (1995). Accordingly, the court's ruling on these matters will not be reversed absent a showing that the trial court's attitude was arbitrary, unreasonable, or unconscionable. "As long as the defense has the opportunity to question testifying co-defendants regarding the full benefits of their plea agreements and demonstrate the bias or prejudice of the co-defendants, the trial court does not err by limiting cross-

> examination on speculative issues." *State v. Montgomery*, 2023-Ohio-4472, 2023 WL 8543053, ¶ 29 (3rd Dist.), citing *Lundgren*, 73 Ohio St.3d 474, 653 N.E.2d 304 (1995).
>
> {¶104} We find that the trial court did not abuse its discretion here. The court explained that the language of "many more years" was sufficient because it established that Levin received a deal for her testimony against Appellant, which may show her bias to lie. (Trial Tr. at 406). The court also emphasized that defense counsel raised Levin's other biases, such as when counsel contrasted Levin's statement to Detective Sergeant McGlynn that it was her fault that the fire started with her testimony that Appellant did it. (Trial Tr. at 397). Defense counsel also contrasted Levin's statement to McGlynn that she did not want to go to jail with her testimony that Appellant started the fire. (Trial Tr. at 399). He raised Levin's statement to Appellant that the man who went to Angela's house with them was Levin's boyfriend with her later statement that she did not know him. (Trial Tr. at 400). Defense counsel also distinguished Levin's statement to McGlynn that she was not intoxicated on the night of the fire with her testimony that she was not in her right mind that night due to intoxication. (Trial Tr. at 401-402). Defense counsel further asked Levin about her statement to McGlynn that she and Appellant were trying to buy marijuana and they were not trying to buy cocaine. (Trial Tr. at 403).
>
> {¶105} Further, defense counsel asked the court if he could use the words "many more" when describing the number of years Levin faced if she had not taken the plea bargain and went to trial. (Trial Tr. at 407). The court agreed and defense counsel said, "Okay." (Trial Tr. at 407). He used this language in cross-examining Levin at trial. (Trial Tr. at 409).
>
> {¶106} From the record, we hold that the trial court did not abuse its discretion in limiting defense counsel's cross-examination on the specific potential sentence Levin faced. The jury was presented with possible reasons for Levin's motivation to lie as the jury was made aware of Levin's charges, the sentence that the State was recommending based upon her agreement to cooperate, and the fact that she faced a sentence that was many more years if she had not pled. The jury received the information that it needed without information as to the sentence that Appellant was facing. The jury received the information that Levin faced a much shorter sentence because she chose to plead guilty and testify against Appellant.
>
> {¶107} Accordingly, Appellant's second assignment of error lacks merit and is overruled.

*Alexander*, 2024-Ohio-2565, ¶¶ 96-107.

"The Sixth Amendment guarantees a criminal defendant the right to confront the prosecution's witnesses through cross-examination." *Tate v. LaRose*, No. 1:18CV979, 2021 WL 2895531, at *3 (N.D. Ohio July 9, 2021), citing *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000). However, "[t]he right to confrontation is not absolute. Trial judges retain great discretion to impose reasonable limits on the cross-examination of witnesses based on concerns such as harassment, prejudice, confusion of the issues, the witness's safety, and marginal relevancy." *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998), citing *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *United States v. Christian,* 786 F.2d 203, 212–13 (6th Cir.1986). A trial judge abuses this discretion when "although some cross-examination of a prosecution witness [i]s allowed, the trial court d[oes] not permit defense counsel to 'expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.'" *Norris*, 146 F.3d at 330; citing *Delaware v. Fensterer,* 474 U.S. 15, 18, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

Criminal defendants are guaranteed "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish." *Jordan v. Warden*, 675 F.3d 586, 594 (6th Cir. 2012) (quoting *Fensterer*, 474 U.S. 15, 20 (1985)). "Trial judges retain great discretion to impose reasonable limits on the cross-examination of witnesses[.]" *Norris*, 146 F.3d at 329. A criminal defendant must show that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness to state a Confrontation Clause violation. *Miller v. Genovese*, 994 F.3d 734, 743 (6th Cir. 2021) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)).

Here, the court of appeals found the trial court did not abuse its discretion by limiting defense counsel's cross-examination concerning the co-defendant witness's potential sentence because the phrase "many more years" established that she received a plea deal and would have faced a sentence that was many

more years had she not plead, which showed her bias to lie. *Alexander*, 2024-Ohio-2565, ¶¶ 103-107. The appellate court determined the jury received the information that the witness faced a shorter sentence because she agreed to testify against appellant, even though they did not receive the exact number of years sentence the witness faced. *Id*. It was within the trial court's discretion to impose this limit. *Norris*, 146 F.3d at 329. Using the phrase "many more years" still provided the same information to the jury – that the witness would receive a longer period of incarceration had she not testified against Alexander – which allowed the jury to draw their own inferences on the reliability of the witness. See *Miller*, 994 F.3d at 743. The undersigned finds Alexander's objection does not detail how he was prohibited from engaging in cross-examination "designed to show a prototypical form of bias on the part of the witness." *Id.* The appellate court finding is neither contrary to nor an unreasonable application of clearly established U.S. Supreme Court law. It is therefore recommended that Ground Two be DENIED.

## IV. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date: September 25, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**